*1101 Appeal by the defendant from a judgment of the Supreme Court, Queens County (Buchter, J.), rendered September 8, 2009, convicting him of assault in the first degree, assault on a police officer, assault in the second degree, and reckless driving, upon a jury verdict, and imposing sentence. By decision and order of this Court dated October 17, 2012, the appeal was held in abeyance and the matter was remitted to the Supreme Court, Queens County, to hear and report on the defendant’s challenge to the prosecutor’s exercise of a peremptory challenge against a black venireperson (see People v Hurdle, 99 AD3d 943 [2012]). The Supreme Court has filed its report.
Ordered that the judgment is modified, on the law, by vacating the convictions of assault in the first degree and assault on a police officer, vacating the sentences imposed thereon, and dismissing those counts of the indictment; as so modified, the judgment is affirmed.
The Supreme Court’s determination that the explanations provided by the People for exercising a peremptory challenge to a black female venireperson were not pretextual is entitled to great deference on appeal and will not be disturbed since it is supported by the record (see Snyder v Louisiana, 552 US 472, 477 [2008]; Miller-El v Cockrell, 537 US 322, 339 [2003]; Batson v Kentucky, 476 US 79 [1986]; People v Simmons, 79 NY2d 1013, 1015 [1992]; People v Scott, 70 AD3d 978, 980 [2010]; People v Jerome, 49 AD3d 556, 557 [2008]). Nevertheless, for the reasons discussed below, we find that the evidence was legally insufficient to establish the defendant’s guilt beyond a reasonable doubt of assault in the first degree and assault on a police officer.
On January 18, 2007, at approximately 8:00 p.m., the defendant was sitting in his legally parked vehicle, a black SUV when an unmarked police car pulled up to the driver’s side of the SUV and one of the four uniformed officers in the car, Sergeant John Pagnotta, had a brief conversation with the defendant. Unsatisfied with the defendant’s answers to his questions, the sergeant directed the officer driving the police car to pull in front of the SUV and park at an angle, blocking the defendant from pulling out of his parking space. The officers then exited the police car and approached the SUV Sergeant Pagnotta opened the door on the driver’s side of the defendant’s vehicle; standing between the door and the door jamb, he continued to question the defendant. When Sergeant Pagnotta ordered him to exit the car, the defendant shifted into drive and pressed his foot down on the gas pedal, crashing the SUV into the police car *1102 in front of it and dragging Sergeant Pagnotta, trapped between the door and the door jamb of the SUV When the SUV pulled away from the police car, Sergeant Pagnotta was released and thrown into the middle of the street, where he was almost hit by an oncoming car. As a result of this incident, Sergeant Pagnotta sustained severe injuries.
Contrary to the People’s contention, the defendant’s argument regarding the legal sufficiency of his conviction of assault in the first degree is preserved for appellate review (see CPL 470.05 [2]; People v Heidgen, 87 AD3d 1016, 1020 [2011], lv granted 17 NY3d 957 [2011]; cf. People v Hawkins, 11 NY3d 484, 493 [2008]). A person commits assault in the first degree pursuant to Penal Law § 120.10 (3) when, “[u]nder circumstances evincing a depraved indifference to human life, he [or she] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person.” “Depraved indifference murder [or assault] differs from intentional murder [or assault] in that it results not from a specific, conscious intent to cause death [or injury], but from an indifference to or disregard of the risks attending defendant’s conduct” (People v Heidgen, 87 AD3d at 1020 [internal quotation marks omitted]; see People v Feingold, 7 NY3d 288, 293 [2006]; People v Gonzalez, 1 NY3d 464, 467 [2004]). “ ‘Reflecting wickedness, evil or inhumanity, as manifested by brutal, heinous and despicable acts, depraved indifference is embodied in conduct that is so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to render the actor as culpable as one whose conscious objective is to kill [or to cause serious physical injury to another person]’ ” (People v McMillon, 31 AD3d 136, 139 [2006], quoting People v Suarez, 6 NY3d 202, 214 [2005]). “The element of depraved indifference to human life comprises both depravity and indifference, and has meaning independent of recklessness and the gravity of the risk created” (People v McMillon, 31 AD3d at 139). Thus, for example, “a reckless homicide is not elevated to depraved indifference murder solely because the defendant’s conduct creates a grave or even an ‘inevitable’ risk of death” (id., quoting People v Suarez, 6 NY3d at 214).
“The question of whether the defendant possessed the mens rea of depraved indifference to human life is highly fact-sensitive, requiring a case-by-case analysis” (People v Heidgen, 87 AD3d at 1020; see People v McPherson, 89 AD3d 752, 757 [2011], lv granted 19 NY3d 969 [2012]; People v Taylor, 79 AD3d 944, 948 [2010]). Here, the police witnesses’ testimony estab *1103 lished that the car door was “fully opened, fully ajar” during Sergeant Pagnotta’s conversation with the defendant, that Sergeant Pagnotta became trapped between the door and the door jamb after the impact of the SUV caused the police car to pivot and collide with the driver’s side of the SUy and that “when [the defendant] put the car into drive and he hit the gas, it was instant, he struck [the police] vehicle,” Sergeant Pagnotta and the police car were dragged along about 15 to 20 feet, until the defendant made a right turn, and Sergeant Pagnotta was thrown into the road. Under these facts, where the defendant was attempting to get away from the officers’ unlawful questioning, where the injuries were caused not by the direct crash, but when the police car pivoted after being hit, and where it all happened in an instant, “the evidence did not establish the degree of depravity and indifference to human life required for depraved indifference [assault]” (People v McMillon, 31 AD3d at 142). Under these circumstances, the defendant did not display conduct “ ‘so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to render the actor as culpable as one’ ” who intentionally caused the serious injuries (id. at 139 [internal quotation marks omitted], quoting People v Suarez, 6 NY3d at 214; see People v Prindle, 16 NY3d 768 [2011]; cf. People v Gomez, 65 NY2d 9 [1985]; People v Heidgen, 87 AD3d at 1022-1023; People v Mooney, 62 AD3d 725 [2009]). Thus, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621 [1983]), we find that there is simply no “valid line of reasoning and permissible inferences [that] could lead a rational person to the conclusion” that the defendant acted with depraved indifference when he caused the injuries to Sergeant Pagnotta (People v Williams, 84 NY2d 925, 926 [1994]; see People v McMillon, 31 AD3d 136 [2006]).
Also preserved for appellate review, contrary to the People’s contention, is the issue of the legal sufficiency of the evidence establishing the “lawful duty” element of the crime of assault on a police officer, and here, too, even viewed in the light most favorable to the prosecution (Penal Law § 120.08; see People v Contes, 60 NY2d 620, 621 [1983]), the evidence was legally insufficient to support that conviction. A person commits the crime of assault on a police officer when, “with intent to prevent a . . . police officer . . . from performing a lawful duty, he [or she] causes serious physical injury to” the officer (Penal Law § 120.08). “To sustain a conviction of assault in the second [or first] degree under Penal Law § 120.05 (3), the People must establish that the injured police officer was engaged in a lawful duty at the time of the assault by the defendant” (People v *1104 Lindsey, 52 AD3d 527, 529 [2008] [internal quotation marks omitted]; see People v Sawyer, 270 AD2d 293, 294 [2000]; People v Greene, 221 AD2d 559, 560 [1995]).
Here, the police conduct in pulling in front of the defendant’s parked vehicle so as to block his ability to pull out of the parking space “constituted a stop, which required reasonable suspicion that the defendant [was] either involved in criminal activity or posed some danger to the police” (People v Lopez, 75 AD3d 610, 612 [2010]; see People v Jennings, 45 NY2d 998 [1978]; People v Be Bour, 40 NY2d 210 [1976]; People v Creary, 61 AD3d 887, 889 [2009]). However, Sergeant Pagnotta’s testimony was clear that, at no time prior to the positioning of the police car so as to block the defendant’s vehicle, nor during the ensuing encounter after Sergeant Pagnotta got out of the police car and approached the window of the defendant’s vehicle, was the defendant observed to be engaged in any criminal activity, or in any activity that would have aroused reasonable suspicion. In fact, not only was the evidence insufficient to establish that the police had an objective, credible reason for approaching the defendant in the first place but, also, Sergeant Pagnotta’s testimony indicated that the initial approach was a mistake, since Sergeant Pagnotta had intended for the officer driving the police car to pull up to a grey car parked behind the defendant’s vehicle. Furthermore, neither the defendant’s startled demeanor nor his responses to the police inquiry provided the officers with “the quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity [was] at hand” (People v Cantor, 36 NY2d 106, 112-113 [1975]). Thus, the police lacked reasonable suspicion, which is required to make a car stop (see People v Banks, 85 NY2d 558, 562 [1995]; People v May, 81 NY2d 725, 727-728 [1992]; People v Argyris, 99 AD3d 808, 810 [2012]; People v Lopez, 75 AD3d at 612; People v Creary, 61 AD3d at 888; People v Bulvard, 213 AD2d 263 [1995]; People v Voliton, 190 AD2d 764 [1993], affd 83 NY2d 192 [1994]; cf. People v Be Bour, 40 NY2d at 220). Moreover, the “[d]efendant’s later conduct cannot validate an encounter that was not justified at its inception” (People v Moore, 6 NY3d 496, 498 [2006]; see People v De Bour, 40 NY2d at 215). Therefore, even if, as the police witnesses testified, the defendant did not furnish his driver’s license when requested, that could not justify the initial stop (see People v May, 81 NY2d at 727-728). The People’s attenuation argument is unpreserved for consideration upon appeal (see People v Hunter, 17 NY3d 725, 728 [2011]; People v Nieves, 67 NY2d 125, 135-136 [1986]) and, in any event, is without merit.
*1105 The defendant’s remaining contentions either are academic in light of our determination or involve matter dehors the record. Skelos, J.E, Leventhal, Chambers and Lott, JJ., concur.