■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PEDER D. JAKOBSON, JR., Appellant. [990 NYS2d 88]—

Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Robbins, J.), rendered May 11, 2012, convicting him of assault in the first degree, assault in the second degree, vehicular assault in the second degree, reckless endangerment in the first degree, reckless endangerment in the second degree, driving while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs, driving while impaired by drugs, reckless driving, criminal possession of a hypodermic instrument (three counts), criminal possession of a controlled substance in the seventh degree, unlawful possession of marijuana, and unsafe transportation of hazardous materials in a motor vehicle, after a nonjury trial, and imposing sentence.

Ordered that the judgment is modified, on the law, by vacating the convictions of assault in the first degree and reckless endangerment in the first degree, vacating the sentences imposed thereon, and dismissing those counts of the indictment; as so modified, the judgment is affirmed.

On the evening of December 4, 2009, the defendant drove his mother's Jeep from her house in Nassau County into Manhattan so that he could attend a concert by the band Phish at Madison Square Garden. Between 8:00 a.m. and 8:30 a.m. on December 5, 2009, the defendant called his father, stating that he was on his way to a methadone clinic in Glen Oaks. The defendant had been enrolled at the methadone clinic for 28

months. After leaving the clinic, the defendant called his father again, stating that he would be home in about 15 minutes. Wendy Piserchia testified that, at approximately 9:40 a.m., she was driving eastbound on Northern Boulevard in Brookville, traveling at approximately 50 to 55 miles per hour, but not faster, as it was drizzling. After hearing a "big, loud crash" and skidding noises, she looked in her rear-view mirror and saw that there had been an accident between the defendant's vehicle and another vehicle, which was driven by Joseph Petrone. She did not witness how the accident occurred.

Meanwhile, Seth Yablans, who had been driving westbound on Northern Boulevard in Brookville, saw an explosion of debris. He also did not witness how the accident happened. Both Piserchia and Yablans pulled their respective vehicles over onto the side of the roadway and then helped the defendant out his vehicle, which had flipped over. Shortly thereafter, police and paramedics arrived. Yablans and Piserchia both testified at trial that, as the defendant observed the paramedics trying to remove Petrone from his vehicle, the defendant appeared to be very upset and kept repeating statements to the effect of "man, I'm so sorry, I'm so sorry, oh my God, man, I'm so sorry." As a result of the accident, Petrone sustained serious physical injuries.

The first police officer to arrive at the accident scene testified at trial that both vehicles had flipped over, and were lying on the shoulder of the roadway. The officer further testified that the defendant's vehicle had sustained significant front-end damage and that Petrone's vehicle had sustained significant rear-end damage. Additionally, the paramedic who treated the defendant at the accident scene testified that the defendant was "very lethargic, very irrational." When the paramedic cut open the defendant's jacket to examine his chest, five objects fell out. One item was a clear container of what looked like marijuana and two yellow containers, one of which appeared to hold marijuana and another which held a white substance. Additionally, there were two bottles marked "Methadone 170 milligrams," one of which was empty, and three syringes. The defendant told the paramedic that he had taken his daily methadone dose and that he was addicted to pain killers. The paramedic testified that, after finding the drugs, and upon observing the defendant's behavior, he believed that the defendant was "high on some type of drug."

At 1:34 p.m. on the day of the accident, a sample of the defendant's blood was taken pursuant to a court order, and drug testing was performed on the sample. Based upon his review of

the results of that testing, Dr. William Closson, a forensic toxicologist, testified that the defendant had ingested Ecstasy, cocaine, marijuana, benzylpiperazine (hereinafter BZP), and Ketamine a few hours prior to the collection of his blood sample. Significantly, Dr. Closson testified that, at the time of the accident, the defendant was actively under the influence of Ecstasy, marijuana, BZP, Ketamine, and methadone. He opined that the combined effect of these drugs would cause a person to be significantly impaired and render him or her unable to safely drive a car.

Gary Ferrucci, a detective in the Vehicular Crimes and Reconstruction Section of the Nassau County Police Department arrived at the accident scene at approximately 11:30 a.m. on the morning of the accident. He testified, among other things, that both vehicles involved in the accident were traveling in the same eastbound direction, that the front of the defendant's vehicle collided straight into the rear of Petrone's vehicle, that the impact was so significant that the front end of the defendant's vehicle showed significant damage, and that the frame rail of Petrone's vehicle had buckled. He also testified that both vehicles came to rest about 75 to 100 feet from the point of impact on the shoulder of the roadway. Although there was no evidence that the defendant was speeding, Ferrucci testified that the defendant was driving at a faster rate of speed than Petrone since the defendant's vehicle collided into the rear of Petrone's vehicle. He further testified that his examination of the roadway and the two vehicles indicated that the defendant did not brake prior to impact. Frank Kassel, a police automotive shop supervisor, inspected both vehicles and found no mechanical defect or failure in either vehicle that could have caused the accident.

The defendant's contention that his conviction of vehicular assault in the second degree under Penal Law § 120.03 (1) was not supported by legally sufficient evidence is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Hawkins*, 11 NY3d 484, 492 [2008]). In any event, viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620, 621 [1983]), we find that it was legally sufficient to establish the defendant's guilt of that crime (*see People v Mojica*, 62 AD3d 100, 110-113 [2009]). Moreover, upon our independent review pursuant to CPL 470.15 (5), we are satisfied that the verdict of guilt on that count was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348 [2007]; *People v Romero*, 7 NY3d 633 [2006]).

Viewing the evidence in the light most favorable to the prose-

cution (*see People v Contes*, 60 NY2d at 621), we find that it was legally sufficient to support the defendant's convictions of assault in the second degree under Penal Law § 120.05 (4) and reckless endangerment in the second degree under Penal Law § 120.20, crimes which require proof of reckless conduct (*see People v Carrington*, 30 AD3d 175 [2006]; *People v Grenier*, 250 AD2d 874, 876-877 [1998]; *People v Bell*, 112 AD2d 27, 27 [1985]; *see also People v Lampon*, 38 AD3d 682, 682-683 [2007]). Moreover, upon our independent review pursuant to CPL 470.15 (5), we are satisfied that the verdict of guilt on those counts was not against the weight of the evidence (*see People v Danielson*, 9 NY3d at 348; *People v Romero*, 7 NY3d 633 [2006]).

However, viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d at 621), we find that the evidence was legally insufficient to support the defendant's convictions of assault in the first degree under Penal Law § 120.10 (3) and reckless endangerment in the first degree under Penal Law § 120.25. Both crimes require proof that the defendant acted with depraved indifference to human life. Depraved indifference is " 'best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not' " (*People v Valencia*, 14 NY3d 927, 929 [2010], quoting *People v Feingold*, 7 NY3d 288, 296 [2006]). It is embodied in conduct that is " 'so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law imposes upon a person who intentionally causes [serious physical injury to] another' " (*People v Suarez*, 6 NY3d 202, 211 [2005], quoting *People v Russell*, 91 NY2d 280, 287-288 [1998]).

The issue of whether a defendant possessed a state of mind evincing depraved indifference to human life is highly fact-sensitive, requiring a case-by-case analysis (*see People v Hurdle*, 106 AD3d 1100, 1102 [2013]; *see also People v McPherson*, 89 AD3d 752, 757 [2011], *affd* 22 NY3d 259 [2013]). Here, the prosecution's witnesses established that the defendant's vehicle, without braking, collided into the back of Petrone's vehicle while both were traveling eastbound in the left lane on Northern Boulevard. The collision was of such force that both vehicles left the roadway and flipped over. Moreover, the testimony of the forensic toxicologist demonstrated that, at the time of the accident, the defendant was significantly impaired due to his ingestion of six different drugs, including methadone. Nevertheless, the evidence of the defendant's conduct did not support a

finding of depraved indifference. The defendant was not driving well in excess of the speed limit, he was not driving the wrong way into oncoming traffic, he had not failed to obey traffic signals, and there was no evidence that he was driving erratically prior to the collision (*see People v Heidgen*, 22 NY3d 259 [2013]). Under these factual circumstances, the prosecution failed to establish that the defendant possessed an "utter disregard for the value of human life" or that he "simply [did not] care whether grievous harm result[ed] or not" from his actions (*People v Valencia*, 14 NY3d at 929; *see also People v Prindle*, 16 NY3d 768, 771 [2011]). Consequently, there is simply no "valid line of reasoning and permissible inferences [that] could lead a rational person to the conclusion" (*People v Prindle*, 16 NY3d at 773; *see People v Contes*, 60 NY2d at 621) that the defendant acted with depraved indifference to human life when he caused the injuries to Petrone (*see People v Hurdle*, 106 AD3d at 1103). Skelos, J.P., Austin, Sgroi and LaSalle, JJ., concur.