*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered: May 14, 2015          105468
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                 Respondent,

       v                       MEMORANDUM AND ORDER

YOCKOL POWELL,
                 Appellant.
_____

Calendar Date: March 24, 2015

Before: Peters, P.J., Egan Jr., Rose and Lynch, JJ.

_____

Donna Maria Lasher, Youngsville, for appellant.

James R. Farrell, District Attorney, Monticello (Katy Schlichtman of counsel), for respondent.

_____

Lynch, J.

Appeal from a judgment of the County Court of Sullivan County (LaBuda, J.), rendered March 22, 2012, upon a verdict convicting defendant of the crimes of rape in the third degree, criminal trespass in the second degree (two counts), endangering the welfare of a child and criminal contempt in the second degree.

Defendant was charged by indictment with two counts of burglary in the second degree, rape in the first degree, endangering the welfare of a child and criminal contempt in the second degree stemming from events occurring in the victim's apartment in May 2011. Following a jury trial, defendant was convicted of the latter two charges and the lesser included charges of rape in the third degree and two counts of criminal

trespass in the second degree. County Court thereafter sentenced defendant to an aggregate prison term of three years, followed by 15 years of postrelease supervision. Defendant appeals and we affirm.

Defendant challenges the verdict as both legally insufficient and as against the weight of the evidence, focusing primarily on the contention the People failed to prove that defendant engaged in nonconsensual sexual intercourse with the victim. In order to preserve a challenge to the legal sufficiency of the evidence, a defendant must make a specific motion to dismiss at the close of the proof (see People v Kolupa, 13 NY3d 786, 787 [2009]; People v Hawkins, 11 NY3d 484, 492 [2008]; People v Desmond, 118 AD3d 1131, 1132 [2014], lv denied 24 NY3d 1002 [2014]). A review of the record here shows that defendant's legal insufficiency claim was preserved only as to the rape conviction. Nonetheless, in deciding whether the verdict was against the weight of the evidence, we necessarily review the legal sufficiency of the evidence on each charge (see People v Danielson, 9 NY3d 342, 348-349 [2007]).

With respect to the rape conviction, the People were required to prove that defendant "engage[d] in sexual intercourse with another person without such person's consent where such lack of consent is by reason of some factor other than incapacity to consent" (Penal Law § 130.25 [3]). A "lack of consent" is further defined as "circumstances under which . . . the victim clearly expressed that he or she did not consent to engage in [the sexual] act, and a reasonable person in the actor's situation would have understood such person's words and acts as an expression of lack of consent to such act under all of the circumstances" (Penal Law § 130.05 [2] [d]; see People v Worden, 22 NY3d 982, 984 [2013]).

The victim and defendant had four children together during a 12-year relationship, including a 10 year old who testified at trial (hereinafter the child). Two days prior to the events at issue, the victim moved into an apartment with the children. Defendant did not live in the apartment and had not been given a key. The victim testified that, on the evening of May 25, 2011, she returned home with her children and found defendant inside

the apartment.  An altercation ensued in which defendant struck the victim multiple times.  After the child screamed and threw a wheel at defendant, defendant told the child that the victim was a "bozo ass bitch.  She deserves what she gets" and pushed the child into a bedroom.  The altercation resumed and defendant threw the victim to the floor while kicking her in the ribs.  After several minutes, defendant then asked, "[W]hat would you do if I raped you, would you tell the police?"  The victim testified that she did not respond, explaining that in "domestic violence cases, they tell you just go along with it, you know, just to try to get [the] abuser away."  The victim and defendant then engaged in sexual intercourse in her bedroom.  The victim testified that, although she was trying to be quiet because her infant child was in the room, she "told him to stop [be]cause that was hurting, I was hurt, my ribs, my legs everything was hurting."  Defendant left in the morning and, when the victim returned to the apartment later that day, she called 911 suspecting that he had returned.  The police arrived within minutes and found defendant hiding in the closet of his daughter's bedroom.

We recognize that the victim was a reluctant witness who wanted to maintain her relationship with defendant.  She explained that it was common for the parties to engage in sexual intercourse after a verbal or physical altercation.  When County Court inquired whether the sexual intercourse was against her will, she responded "not necessarily."  Notwithstanding the victim's equivocation, the record shows that she had been beaten and injured prior to the act of intercourse and, consequently, asked defendant to stop during the act.  Moreover, the child testified that she witnessed the physical altercation and heard the victim "screaming [for defendant to] get off her."  Contrary to the victim's testimony, the child also testified that, before she was put into the bedroom, she observed defendant remove the victim's pants.

Viewing this evidence in a light most favorable to the People, we find that the jury could rationally conclude that the victim did not consent to the sexual encounter, and that the evidence was legally sufficient to support the rape conviction.  Although a different verdict would not have been unreasonable, after viewing and weighing the evidence in a neutral light, with

deference to the jury's credibility assessments, we further conclude that the verdict on this count is not contrary to the weight of the evidence (see People v Desmond, 118 AD3d at 1132-1133; People v Simonetta, 94 AD3d 1242, 1243-1244 [2012], lv denied 19 NY3d 1029 [2012]).

We further conclude that the verdict is not against the weight of the evidence on the remaining convictions.  With respect to the endangering the welfare of a child conviction, the People were required to prove that defendant "engage[d] in conduct knowing it [would] present a 'likelihood' of harm to a child (i.e., with an awareness of the potential harm)" (People v Hitchcock, 98 NY2d 586, 590 [2002], quoting People v Johnson, 95 NY2d 368, 372 [2000]).  That defendant repeatedly struck the victim directly in the presence of the child, who attempted to intervene on behalf of her mother, adequately supports this conviction (see People v Johnson, 95 NY2d at 371-372 [2000]; People v Bell, 80 AD3d 891, 891 [2011]; People v Bray, 46 AD3d 1232, 1234 [2007]).  Further, as defendant entered and remained in the victim's apartment without permission on both days described above, the jury could readily find defendant guilty of two counts of criminal trespass in the second degree (see Penal Law § 140.15 [1]; People v Carter, 46 AD3d 1335, 1335 [2007], lv denied 10 NY3d 932 [2008]; People v Jackson, 38 AD3d 1052, 1054 [2007], lv denied 8 NY3d 986 [2007]; People v Hudson, 269 AD2d 747, 747 [2000], lv denied 94 NY2d 948 [2000]).  Given the undisputed fact that an order of protection issued in 2002 remained in effect at the time of this incident and required defendant to stay away from the victim and her home, the jury could reasonably find defendant guilty of criminal contempt in the second degree (see Penal Law § 215.50 [3]; People v Lewis, 5 NY3d 546, 552-553 [2005]; People v McPherson, 32 AD3d 558, 559 [2006], lv denied 7 NY3d 868 [2006]).

Finally, defendant contends that he was deprived of a fair trial by comments made by the prosecutor during summation. Notably, defendant failed to preserve this claim by raising any objections at trial (see People v Adams, 39 AD3d 1081, 1083 [2007], lv denied 9 NY3d 872 [2007]; People v Nichols, 257 AD2d

851, 853 [1999], lv denied 93 NY2d 901 [1999]).[1]

Peters, P.J., Egan Jr. and Rose, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court

_____

[1]   Were this issue properly before us, however, we would reject defendant's claim.  A prosecutor is accorded "broad latitude" when responding to a defense counsel's summation, although there are limitations inherent in a prosecutor's status as a quasi-judicial officer that compels a prosecutor to act impartially in the pursuit of justice (People v Wilhelm, 34 AD3d 40, 54 [2006]; see People v D'Alessandro, 184 AD2d 114, 119 [1992], lv denied 81 NY2d 884 [1993]).  Here, defense counsel emphasized that this was a "family" matter and the People were primarily concerned with "conviction statistics," going so far as to assert that "[the victim] needs an [o]rder of [p]rotection from the D.A.'s office."  Such commentary predictably prompted a strong and sometimes improper response from the prosecutor, but not one so substantially prejudicial as to deprive defendant of a fair trial (see People v Santiago, 22 NY3d 740, 752 [2014]; People v Nelson, 68 AD3d 1252, 1255 [2009]).