*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  July 7, 2016                    107450
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                      MEMORANDUM AND ORDER

DOMONEC TUCKER,
                    Appellant.
_____

Calendar Date:  June 1, 2016

Before:  Peters, P.J., Garry, Rose, Mulvey and Aarons, JJ.

_____

        Hug Law, PLLC, Albany (Matthew C. Hug of counsel), for
appellant.

        P. David Soares, District Attorney, Albany (Brittany L.
Grome of counsel), for respondent.

_____

Peters, P.J.

        Appeal from a judgment of the Supreme Court (McDonough,
J.), rendered March 6, 2015 in Albany County, upon a verdict
convicting defendant of the crime of assault in the second
degree.

        In the early morning hours of February 23, 2013, three City
of Albany police officers responded to a 911 call in which the
caller requested police assistance but did not provide any detail
as to the nature of the emergency.  Upon arriving at the scene,
officers Jason Seward and Jarrod Jourdin found a vehicle
abandoned at an intersection and saw defendant, who was
approximately a block away from the intersection, struggling with
a male over a purse.  Seward identified himself as a police

officer and commanded defendant and the male to come towards him. Each complied, with the male behaving aggressively while approaching Seward.  At this point, officer Joseph Smith arrived and observed defendant and the male walking towards Seward. Seward and Jourdin thereafter detained the male, and Smith approached defendant with the belief that a domestic incident had occurred between defendant and the male and that the two should be separated.

After Smith approached defendant, he saw tears on defendant's face and then began questioning her in an effort "to assess whether she was okay" and to investigate the 911 call. According to Smith, defendant did not respond to his questions and, instead, focused all of her attention on the male, who was being detained by Seward and Jourdin approximately five feet away.  Although Smith made several attempts to draw defendant's attention and engage her in conversation, she remained nonresponsive and attempted to walk towards the male.

According to Smith, after questioning defendant for about 30 seconds to a minute without receiving any response, he decided to detain and handcuff defendant "to gain [her] full attention and to actually have [defendant and the male] separated."  Smith then grabbed defendant's arm and stated, "ma'am, I'm going to detain you.  I want to put you in handcuffs.  It is for your safety, it's for our safety until we can figure out what's happening.  You are not responding to me but I'm going to put handcuffs on you."  Defendant complied and placed her hands behind her back and then proceeded to tell Smith about a back injury she had, that "she didn't need to be detained or handcuffed" and that she "didn't do anything."  Smith responded, "You are going to be detained until I can figure out what's happening here."  As Smith was attempting to place the handcuffs on defendant, she tried to pull away from him.  Defendant was later forced to the ground,[1] where she began swinging her arms

_____

[1]  Defendant testified at trial to a completely different version of her altercation with Smith, alleging that Smith — immediately upon approaching her and without questioning her — grabbed her arm and forced her to the ground, even though she

and kicking her legs at Smith.  Two other police officers later arrived to assist Smith in controlling defendant.  During the altercation, Smith and one of the assisting officers each sustained an injury to a knee, and Smith also suffered a facial laceration.[2]

Defendant was indicted and charged with two counts of assault in the second degree.  Following a jury trial, she was convicted of the count regarding her altercation with Smith, but acquitted of the count involving the assisting officer.  Sentenced to two years in prison, to be followed by three years of postrelease supervision, defendant appeals.

Defendant contends that the verdict was not supported by legally sufficient evidence, claiming that the People failed to prove that Smith was performing a lawful duty at the time when defendant assaulted him.  While defendant's challenge to the legal sufficiency of the evidence is not preserved for our review due to her failure to advance it specifically in her motion to dismiss (see People v Powell, 128 AD3d 1174, 1175 [2015]; People v Andrews, 127 AD3d 1417, 1419 [2015], lv denied 25 NY3d 1159 [2015]), upon our review of the record, we nevertheless exercise our interest of justice jurisdiction and reverse defendant's conviction (see CPL 470.15 [6]; 470.20 [2]; People v Hemingway, 85 AD3d 1299, 1301 n 2 [2011]; People v Caulkins, 82 AD3d 1506,

---

told Smith that she was the person who called 911.

[2]  At trial, Smith provided inconsistent testimony regarding when and how he sustained the facial laceration.  At one point, Smith testified that, when he lost his grip of defendant as he was attempting to place handcuffs on her, defendant immediately turned around and struck him across his face.  Later, when confronted with a report that he participated in drafting pertaining to this incident, Smith conceded that defendant did not strike his face as he was attempting to handcuff her while they were standing.  Instead, he testified that he sustained the facial laceration at a later time when defendant was lying on the ground – without specifying whether the injury was caused by defendant.

1507 [2011]; People v Bruno, 63 AD3d 1297, 1299 [2009], lv denied 13 NY3d 858 [2009]).

"'[A] person is guilty of assault in the second degree when . . . [w]ith intent to prevent a . . . police officer . . . from performing a lawful duty, . . . he or she causes physical injury to such . . . police officer'" (People v Nisselbeck, 85 AD3d 1206, 1207 [2011], quoting Penal Law § 120.05 [3]; accord People v McLean, 128 AD3d 1106, 1107 [2015], lv denied 25 NY3d 1204 [2015]; see People v Somerville, 72 AD3d 1285, 1287 [2010]). "To sustain a conviction of assault in the second degree under Penal Law § 120.05 (3), the People must establish that the injured police officer was engaged in a lawful duty at the time of the assault by the defendant" (People v Lindsey, 52 AD3d 527, 529 [2008] [internal quotation marks and citations omitted], lv denied 11 NY3d 738 [2008]; see People v Cofield, 131 AD3d 539, 540 [2015], lv denied 26 NY3d 1038 [2015]; People v Hurdle, 106 AD3d 1100, 1103 [2013], lvs denied 22 NY3d 956, 996 [2013]).

Here, Smith's conduct in physically restraining defendant and attempting to place handcuffs on her constituted, at least, a forcible detention, which required Smith to have a reasonable suspicion that defendant had committed, was committing or was about to commit a crime (see People v Moore, 6 NY3d 496, 498-499 [2006]; People v De Bour, 40 NY2d 210, 223 [1976]; People v Morris, 138 AD3d 1239, 1240 [2016]; People v Stroman, 107 AD3d 1023, 1024 [2013], lv denied 21 NY3d 1046 [2013]). However, Smith's own testimony reveals that at no time before he attempted to handcuff defendant did he observe her engage in any criminal activity or any suspicious conduct that could have given rise to a reasonable suspicion that she had committed or was about to commit a crime (see People v Cantor, 36 NY2d 106, 113 [1975]; People v Coronado, 139 AD3d 452, 452-453 [2016]; People v Hurdle, 106 AD3d at 1104). Instead, Smith testified that he saw tears on defendant's face and was told by defendant that she did not do anything and did not need to be detained, and that he decided to detain her because she failed to respond to his questions. While Smith certainly acted appropriately in questioning defendant concerning the 911 call he was responding to (see People v Nonni, 135 AD3d 52, 55 [2015]; see generally People v Moore, 6 NY3d at 498), and may well have been frustrated by her lack of

cooperation, defendant had a constitutional right not to respond to police inquiry (see People v Moore, 6 NY3d at 500-501; People v May, 81 NY2d 725, 727-728 [1992]; People v Howard, 50 NY2d 583, 592 [1980], cert denied 449 US 1023 [1980]; People v Hightower, 136 AD3d 1396, 1397 [2016]; People v McCullough, 31 AD3d 812, 813 [2006], lv denied 7 NY3d 850 [2006]). Thus, defendant's failure to answer Smith's questions, in and of itself, was insufficient to provide Smith with the requisite reasonable suspicion of criminal activity (see People v Moore, 6 NY3d at 500-501; People v May, 81 NY2d at 727-728; People v Hightower, 136 AD3d at 1397; People v McCullough, 31 AD3d at 813).

Smith further testified that, apart from defendant's failure to respond, defendant attempted, on more than one occasion, to walk around him and move towards the male, who was behaving aggressively at that time. Such conduct does not, however, support a reasonable suspicion that defendant was threatening the police officers' safety or attempting to interfere with the male's arrest. To that end, the testimony established that the male had already been handcuffed and detained by two other officers before Smith even started questioning defendant, who was docile until she resisted his attempts to handcuff her. Moreover, the record is bereft of testimony indicating that any of the officers felt threatened or endangered by defendant's behavior.

Viewing the evidence in the light most favorable to the People (see People v Reed, 22 NY3d 530, 534 [2014]; People v Contes, 60 NY2d 620, 621 [1983]), we find no valid line of reasoning and permissible inferences from which a rational jury could have concluded that Smith possessed the requisite reasonable suspicion of criminality necessary to forcibly detain defendant. As defendant's subsequent conduct in assaulting Smith "cannot validate an encounter that was not justified at its inception" (People v Moore, 6 NY3d at 498; accord People v Abdul-Mateen, 126 AD3d 986, 988 [2015]; People v Hurdle, 106 AD3d at 1104), the evidence was legally insufficient to establish that Smith was injured while undertaking a lawful duty, and defendant's conviction must be reversed (see People v Hurdle, 106 AD3d at 1103-1104; People v Everett, 82 AD3d 1666, 1666-1667 [2011]; compare People v Sawyer, 270 AD2d 293, 294 [2000], lv

denied 95 NY2d 803 [2000]).  Defendant's remaining contentions are rendered academic.

Garry, Rose, Mulvey and Aarons, JJ., concur.

ORDERED that the judgment is reversed, as a matter of discretion in the interest of justice, and indictment dismissed.

ENTER:

Robert D. Mayberger
Clerk of the Court