People v Swain (2019 NY Slip Op 00002)





People v Swain


2019 NY Slip Op 00002


Decided on January 3, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 3, 2019

108472

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
ANTHONY SWAIN, Appellant.

Calendar Date: November 15, 2018

Before: Garry, P.J., Egan Jr., Lynch, Aarons and Pritzker, JJ.


David M. Abbatoy, Rochester, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Susan Rider-Ulacco of counsel), for respondent.



MEMORANDUM AND ORDER
Lynch, J.
Appeal from a judgment of the County Court of Chemung County (Rich Jr., J.), rendered March 18, 2016, convicting defendant upon his plea of guilty of the crime of attempted murder in the second degree.
Shortly after midnight on January 1, 2015, William Michalko, an officer with the West Elmira Police Department, responded to the scene of a shooting outside of a bar on the north side of the City of Elmira, Chemung County. By the time he arrived, the assailants had fled. After assisting at the bar, Michalko was dispatched to the vicinity of Hudson and Harmon Streets on the City's south side for a report of shots fired. When he arrived at that location, Michalko observed defendant, who he described as about 6 feet tall and wearing a gray hoodie, running across a yard and then walking in Michalko's direction. He observed defendant walk between two vehicles and heard a sound, which he described as a "thud." Michalko asked defendant to stop and identify himself and then patted him down for weapons. Finding none, defendant was released.
Meanwhile, Richard Matthews, a deputy with the Chemung County Sheriff's Department, also responded to the shots fired call, stopping at a nearby home around 2:00 a.m., where a group dispersed upon his arrival. In response, Matthews issued a radio description of one of the individuals who fled over a fence as a black male, approximately 6 feet tall and wearing gray clothing. Hearing this dispatch, and believing that the description matched defendant, Michalko returned to the Hudson/Harmon intersection and observed defendant approaching as well. When Michalko activated his headlights, defendant turned and walked away. Michalko pursued and stopped defendant in an alleyway off of Harmon Street. Matthews arrived within minutes and indicated that defendant "could have been the subject" who fled from him. At that point, Michalko placed defendant in handcuffs and secured him in the patrol car so that he and Matthews could check the area between the parked cars. In doing so, Michalko found a handgun near the back tire of one of the vehicles.
Defendant was transported to the Elmira Police Department, where he was interviewed by Investigator Zachary Stewart. After waiving his Miranda rights, defendant admitted that he and his brother had been at the bar, but he denied being involved in the shooting. Defendant then told Stewart, "I didn't do it, but I did it," which he went on to explain meant that "he was not going to tell on anyone else and this was going to be pinned on him anyway[]."
In February 2015, defendant was indicted on charges of attempted murder in the second degree, criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree (two counts), criminal possession of a weapon in the third degree and assault in the second degree. After County Court denied defendant's motion to suppress the weapon, his statement and a witness's identification of him, defendant pleaded guilty to attempted murder in the second degree in satisfaction of all charges and was sentenced to a prison term of 15 years, with five years of postrelease supervision. Defendant appeals.
Defendant maintains that he was illegally detained under the four-level test outlined in People v De Bour (40 NY2d 210, 223 [1976]) while the police searched for and found the handgun. We agree. Michalko's conduct in placing defendant in handcuffs and locking him in the back seat of the patrol car constituted, at least, a forcible detention, which required Michalko to have a reasonable suspicion that defendant was involved in a felony or misdemeanor (see People v Moore, 6 NY3d 496, 498-499 [2006]; People v Tucker, 141 AD3d 748, 750 [2016]). At this point, there was no information tying defendant to the shooting incident at the bar, and the record provides no detail as to the source of the nonspecific shots fired report. Although defendant arguably matched the description of the person who fled from Matthews, Michalko had already confirmed that defendant did not possess a weapon. These circumstances do not create a reasonable suspicion that defendant was involved in the commission of a crime. That Michalko subsequently recovered the handgun, which provided probable cause for his arrest, does not validate the unlawful detention (see People v Moore, 6 NY3d at 498).
This determination does not end our inquiry as to whether the weapon and the statement should have been suppressed. Having discarded the handgun in the street, we find that defendant waived any challenge to the seizure of this item (see People v Howard, 50 NY2d 583, 588-589 [1980], cert denied 449 US 1023 [1980]; People v Rozier, 143 AD3d 1258, 1259 [2016]; People v Stevenson, 273 AD2d 826, 827 [2000]; People v Riddick, 224 AD2d 782, 784 [1996]; compare People v Mueses, 132 AD3d 1257, 1258 [2015]; see generally People v Howard, 50 NY2d 583, 588-589 [1980], cert denied 449 US 1023 [1980]). We also decline to suppress the evidence of defendant's statement. "[A] confession that is made after an arrest without probable cause is not subject to suppression if the People adequately demonstrate that the inculpatory statement was attenuated from the improper detention . . .. The attenuation doctrine requires a court to consider the temporal proximity of the arrest and the confession, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct" (People v Bradford, 15 NY3d 329, 333 [2010] [internal quotation marks and citations omitted]). This record does not evidence deliberate official misconduct. Although we have concluded that Michalko went too far in detaining defendant, he did so to double check the vicinity of the parked cars to determine whether defendant had discarded anything there. Stewart, who had responded to the scene to secure the handgun but was not involved in detaining or transporting defendant, administered Miranda rights to defendant at the police station around 4:00 a.m. By this point, Stewart had independent witness statements that tied defendant to the shooting at the bar. Defendant proceeded to waive his Miranda rights, and the ensuing interview with Stewart, which was videotaped, lasted about 40 minutes. The suppression court noted that defendant was in custody but not handcuffed during the interview, and that no threats or promises had been made. For his part, Stewart described defendant as a "gentleman . . . through the entire interview, laid back." Given the above, we conclude that defendant's inculpatory statement was admissible because it was sufficiently attenuated from the unlawful detention (see People v Bradford, 15 NY3d at 333-335).
We further conclude that County Court properly denied defendant's motion to suppress the identification testimony by Tracy Wilson, who was involved in the bar altercation. [*2]At the commencement of the suppression hearing, the People acknowledged that the photo array displayed to Wilson was compromised and requested that the court conduct an independent basis hearing. Wilson did not know defendant prior to the incident, but testified that he noticed defendant acting suspiciously in the bar and then confronted defendant outside after seeing defendant and his two companions assault Wilson's friend. Although it was past midnight, Wilson confirmed that there was enough lighting outside to see defendant's face. He was about 8 to 10 feet from defendant when defendant pulled out a gun and began shooting. Wilson explained, "We've never lost eye contact that whole time from when I approached him to that street" where the shooting began — an encounter that lasted about 10 minutes. Crediting this testimony, County Court concluded that there was a sufficiently reliable independent basis for Wilson's identification of defendant at the suppression hearing notwithstanding the improper photo array. We defer to that assessment and find clear and convincing evidence that Wilson's identification testimony was based on his interactions with defendant, not the photo array (see People v Marshall, 26 NY3d 495, 506-507 [2015]; People v Smith, 122 AD3d 1162, 1164 [2014]; People v Parker, 257 AD2d 693, 694-695 [1999], lvs denied 93 NY2d 1015, 1024 [1999]).
Finally, we are not persuaded by defendant's contention that he was deprived of his right to the effective assistance of counsel. This argument keys into County Court's removal of appointed trial counsel for failing to submit a post-suppression hearing memorandum, and the asserted failure of replacement counsel to properly address all of the suppression issues. Our review of the suppression hearing transcript shows that counsel provided reasonably competent representation, as the details of the events at issue were adequately explored. Important nuances were brought out on cross-examination, such as the fact that Wilson could not tell what kind of gun defendant was holding, Matthews could not find anything to confirm that shots had been fired, Michalko was not provided any details as to the shots fired report and Michalko confirmed that he handcuffed and locked defendant in the patrol car. Moreover, we have concluded that the court properly denied defendant's suppression motion, and ineffective assistance of counsel does not arise from failing to make an argument with "little or no chance of success" (People v Caban, 5 NY3d 143, 152 [2005] [internal quotation marks and citation omitted]).
Garry, P.J., Egan Jr., Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.