458 So.2d 308 (1984)
Willie Lee MARCH, Andrei Stephonne Kelly, and David Murphy, Appellants,
v.
STATE of Florida, Appellee.
Case Nos. 82-1451, 82-1742 and 82-1743.
District Court of Appeal of Florida, Fifth District.
September 13, 1984.
Rehearings Denied October 9 and November 2, 1984.
*309 James B. Gibson, Public Defender, and Christopher S. Quarles, Asst. Public Defender, Daytona Beach, for appellant March.
J. William Masters, II, Orlando, for appellant Kelly.
Charles A. Tabscott, Orlando, for appellant Murphy.
Jim Smith, Attorney General, Tallahassee, and Mark C. Menser, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Appellants appeal from convictions of manslaughter following a jury trial on charges of second degree murder. We affirm.
The charges arose out of a shootout between appellants March and Murphy on the one side, and appellant Kelly on the other. The evidence reflects that all three appellants were engaged in drug trafficking and that the dispute arose over "turf." In the course of the altercation, Little Walter Tukes, a bystander, was killed by a bullet which the evidence shows was fired from Kelly's rifle.
March and Murphy contend that the evidence does not support their conviction because they were using handguns and the fatal bullet came from Kelly's rifle. There is no merit to this contention. Because all three parties were engaged in the same felonious activity (the shootout) their participation in the episode would have been sufficient to support a finding that they were aiders and abettors to second degree murder, so the evidence was sufficient to support the conviction of the lesser offense of manslaughter. See LaMura v. State, 424 So.2d 25 (Fla. 4th DCA 1982).
Kelly asserts the position that he was clearly trying to protect himself from March and Murphy so that his use of the rifle was in self-defense and he was entitled to a directed verdict of acquittal. Unfortunately for his position, the evidence is capable of the inference that he was the aggressor on the day of the fatal shooting and that he arrived on the scene with his rifle ready to do battle because of an altercation which had taken place the previous day between the same parties. The issue of self-defense was properly submitted to the jury.
One other point concerns us greatly. Appellant March contends that he was denied a fair trial by virtue of lengthy prayers recited by the trial judge to open each court session[1] and to which he objected *310 below. He contends that these were more than prayers for divine guidance  that they were thinly disguised comments on the evidence and nature of the crime for which appellants were being tried, and that as a result appellant March was deprived of a fair trial and is entitled to a new trial, free of any such influence of the trial judge upon the jury.
We have carefully reviewed the content of the prayers given by the trial judge and agree that they are more than the usual nonsectarian benedictions used by many public officials to solemnize the opening of public functions. The prayers invoked here are clearly sectarian in nature and might be construed as an expression of the judge's personal religious preferences. There is an inherent danger that litigants who hold different religious beliefs would feel that their cause was not being decided solely on the merits, and that a jury might be similarly influenced.
It should be clear that we do not criticize the proper use of prayers, including recognition of a supreme being, in the opening of judicial or legislative sessions. We agree that such prayers serve an important function while not jeopardizing the interests of any party. See Marsh v. Chambers, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983). The sessions of this court are opened daily with such a prayer.
However, when a trial judge offers an invocation which is in effect a sermon, the judge may appear to the parties and to the jury to be espousing a standard to be applied in evaluating the evidence or the parties, and in effect, to be giving a jury instruction. In any litigation, and especially in a criminal trial, the trial judge must refrain from any activity which even remotely could appear to the jury as a comment on the evidence or on the proceedings before the court, or on the character of the defendants who are on trial. References to "save us from violence, discord and confusion;" or "subordination and obedience to government;" or "brotherly affection and love for one another or their fellow citizens;" or "a sense of our responsibility in saving the world from ruin;" and "obedience to thy law" could well be taken by jurors as an indication by the court that defendants were misfits who had violently departed from the divine umbrella of justice and brotherly love and thus should be punished.
We have admittedly taken the comments out of context only to make a point. Any comment by a trial judge made in the course of a jury trial which expresses or tends to express the judge's view as to the weight of the evidence, the credibility of a witness, or the guilt of the accused poses a threat of interfering with the jury's independent and impartial evaluation of the evidence. The dominant position of a judge in a case tried by a jury is such that his remarks or comments, especially if they relate to the proceedings before him, overshadow or tend to overshadow the actions *311 of litigants, witnesses or other court officials. For this reason, comments on the evidence by a judge are prohibited and a judge should scrupulously refrain from any comments which could be so construed. See Robinson v. State, 161 So.2d 578 (Fla. 3d DCA 1964); Hamilton v. State, 109 So.2d 422 (Fla. 3d DCA 1959).
In the light of the overwhelming evidence of guilt in this case, we do not consider the prayers complained of here to be so prejudicial as to warrant reversal. We caution trial judges however, to avoid the risk of causing the reversal of what might otherwise be a correct result by injecting matters into the trial of a case that might best be left for other times and other places.
We have examined the other points raised by appellants and find them to be without merit.
The judgments of conviction are
AFFIRMED.
DAUKSCH, ORFINGER and SHARP, JJ., concur.
NOTES
[1] The parties have stipulated that the following prayers were recited to the jury during the course of the four day trial:

Almighty God: We make our earnest prayer that thou wilt keep the United States in thy Holy protection; that thou wilt incline in the hearts of the citizens a spirit of subordination and obedience to government, and entertain a brotherly affection and love for one another for their fellow citizens of the United States at large and finally that thou wilt most graciously be pleased to dispose of all to do justice, to love mercy and to demean ourselves with that charity, humility and pacific temper of mind which were the characteristics of the divine author of our blessed religion, and without a humble imitation of whose example in these things we can never hope to be a happy nation. Grant our supplication, we beseech thee, through Jesus Christ our Lord, Amen.
* * * * * *
Almighty God, father of all men: To thee we raise thankful hearts for deliverance from forces of evil.... Deliver us also, we beseech thee, from the greater danger of ourselves. Have mercy upon us and forgive us for our part in the present desolation of the world. Awake us each one to a sense of our responsibility in saving the world from ruin. Open our minds and eyes and hearts to the desperate plight of millions. Arouse us from indifference into action. Let none of us fail to give his utmost in sympathy, understanding, thought and effort... . Fulfill in us and through us thy glorious intention: that thy peace, thy love and thy justice may enter into the regeneration of the world.
* * * * * *
Almighty God, who hast given us this good land for our heritage; we humbly beseech thee that we may always prove ourselves a people mindful of thy favor and glad to do thy will. Bless our land with honorable industry, sound learning, and pure manners.
Save us from violence, discord, and confusion; from pride and arrogancy, and from every evil way. Defend our liberties, and fashion into one united people the multitudes brought hither out of many kindreds and tongues.
Endue with the spirit of wisdom those to whom in thy name we entrust the authority of government, that there may be justice and peace at home, and that through obedience to thy law, we may show forth thy praise among the nations of the earth.
In the time of prosperity, fill our hearts with thankfulness, and in the day of trouble, suffer not our trust in thee to fail; all of which we ask through Jesus Christ our Lord, Amen.
* * * * * *
O God, mighty and merciful, the judge of all men, who sittest in the throne judging right: we humbly beseech thee to bless (sic) the courts of justice and magistrates in this land and grant to all those who are called upon to minister justice, the spirit of wisdom and discernment; and that they may be strong and patient, upright and compassionate, fill them, we beseech thee, with the spirit of thy holy fear; and give unto them the spirit of wisdom and understanding, Amen that they may discern of thee alone; through Him who shall come to be our judge, thy son our saviour Jesus Christ, Amen.