OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Shortly before noon on December 17, 1992, Shamel Bur
 
 *287
 
 roughs engaged in a gun battle with Jermaine Russell and Khary Bekka on Centre Mall of the Red Hook Housing Project in Brooklyn. During the course of the battle, Patrick Daly, a public school principal looking for a child who had left school, was fatally wounded by a single stray nine millimeter bullet that struck him in the chest. Burroughs, Bekka and Russell— defendants on this appeal — were all charged with second degree murder (Penal Law § 125.25 [1], [2]).
 

 Two separate juries, one for Burroughs and another for Russell and Bekka, were impanelled contemporaneously and heard the evidence presented at trial. Although ballistics tests were inconclusive in determining which defendant actually fired the bullet that killed Daly, the theory of the prosecution was that each of them acted with the mental culpability required for commission of the crime, and that each "intentionally aided” the defendant who fired the fatal shot (Penal Law § 20.00). Both juries convicted defendants of second degree, depraved indifference murder (Penal Law § 125.25 [2]).
 
 *
 

 On appeal, each defendant challenges the sufficiency of the evidence. Because the evidence, viewed in the light most favorable to the prosecution, could have led a rational trier of fact to find, beyond a reasonable doubt, that each defendant was guilty of depraved indifference murder as charged, we affirm the order of the Appellate Division sustaining all three convictions.
 

 A depraved indifference murder conviction requires proof that defendant, under circumstances evincing a depraved indifference to human life, recklessly engaged in conduct creating a grave risk of death to another person, and thereby caused the death of another person (Penal Law § 125.25 [2]). Reckless conduct requires awareness and conscious disregard of a substantial and unjustifiable risk that such result will occur or that such circumstance exists (Penal Law § 15.05 [3]). "The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation”
 
 (id.).
 
 To constitute "depraved indifference,” conduct must be " 'so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others, and so blameworthy as to warrant the same criminal liability as that which the law
 
 *288
 
 imposes upon a person who intentionally causes the death of another’ ”
 
 (People v Fenner,
 
 61 NY2d 971, 973;
 
 see also, People v Register,
 
 60 NY2d 270,
 
 cert denied
 
 466 US 953).
 

 Although defendants underscore that only one bullet killed Patrick Daly and it is uncertain which of them fired that bullet, the prosecution was not required to prove which defendant fired the fatal shot when the evidence was sufficient to establish that each defendant acted with the mental culpability required for the commission of depraved indifference murder, and each defendant "intentionally aided” the defendant who fired the fatal shot (Penal Law § 20.00;
 
 see also, People v Brathwaite,
 
 63 NY2d 839, 841-842). Defendants urge, however, that the evidence adduced at trial did not support a finding that they — as adversaries in a deadly gun battle — shared the "community of purpose” necessary for accomplice liability
 
 (see, People v Allah,
 
 71 NY2d 830). We disagree. The fact that defendants set out to injure or kill one another does not rationally preclude a finding that they intentionally aided each other to engage in the mutual combat that caused Daly’s death.
 

 People v Abbott
 
 (84 AD2d 11) provides an apt illustration. That case involved two defendants — Abbott and Moon — who were engaged in a "drag race” on a residential street when Abbott lost control and smashed into another automobile, killing the driver and two passengers. Both defendants were convicted of criminally negligent homicide, but Moon asserted that he was not responsible for Abbott’s actions and that his conviction should be set aside. Rejecting this argument, the court found that, although Moon did not strike the victim’s car and was Abbott’s adversary in a competitive race, he intentionally participated with Abbott in an inherently dangerous and unlawful activity and therefore shared Abbott’s culpability. Moon’s "conduct made the race possible” in the first place, as there would not have been a race had Moon not "accepted Abbott’s challenge”
 
 (id.
 
 at 15;
 
 see also, People v Fabian,
 
 154 Misc 2d 957, 962 [although defendants were trying to harm each other, at the same time they acted in concert to create an explosive condition that resulted inevitably in the victims’ death and injuries];
 
 Alston v State,
 
 339 Md 306, 320, 662 A2d 247, 254 [there was sufficient evidence to support a jury finding that rival groups tacitly agreed, pursuant to an "unwritten code of macho honor,” that there would be mutual combat and that each group aided, abetted and encouraged its adversary to engage in urban warfare]).
 

 In the present case, the jurors were instructed: "If you find that the People have proven beyond a reasonable doubt that
 
 *289
 
 [defendants]
 
 took up each other’s challenge,
 
 shared in the venture and unjustifiably, voluntarily and jointly created a zone of danger, then each is responsible for his own acts and the acts of the others * * * [and] it makes no difference whether it was a bullet from Mr. Bekka’s gun, Mr. Russell’s gun or Mr. Burrough’s gun that penetrated Mr. Daly and caused his death” (emphasis added).
 

 The trial evidence was sufficient to support each jury’s findings in accordance with this charge. Although Burroughs was shooting at Russell and Bekka, and Russell and Bekka were shooting at Burroughs, there was adequate proof to justify the finding that the three defendants tacitly agreed to engage in the gun battle that placed the life of any innocent bystander at grave risk and ultimately killed Daly. Indeed, unlike an unanticipated ambush or spontaneous attack that might have taken defendants by surprise, the gunfight in this case only began after defendants acknowledged and accepted each others’ challenge to engage in a deadly battle on a public concourse.
 

 As defendants approached one another on Centre Mall, a grassy open area that serves as a thoroughfare for the 7,000 residents of the 28-building housing complex, it was evident that an encounter between them would be violent and would endanger others. There was trial evidence that when Burroughs first saw Bekka and Russell walking toward him, he immediately recognized the danger, instructing the two female friends accompanying him, one of them pregnant, to "run” or "go.” They too plainly sensed the danger because, without hesitation, they turned and ran.
 

 Despite the palpable threat, Burroughs, armed with a nine millimeter Glock, did not flee with his friends. Rather, he continued toward Russell and Bekka, tacitly accepting their invitation and issuing one of his own. In turn, Russell and Bekka, also armed with automatic weapons, continued walking toward Burroughs, challenging him and accepting his challenge. As they drew nearer, defendants each began firing their high-powered guns, capable of shooting bullets at an average rate of 1,100 feet per second, across the pedestrian thoroughfare. The dozen or more people in the area, as well as those with windows overlooking the Mall, were put at grave risk as defendants unleashed a hail of bullets. Witnesses testified that the battle sounded "like a war” and that anywhere from nine to 20 shots were fired.
 

 
 *290
 
 Although Centre Mall is surrounded by buildings affording refuge, defendants chose instead to run through the area aggressively pursuing one another. Indeed, even after exchanging an initial volley of shots, they continued to wage their private war, issuing taunts and ducking back and forth behind buildings and trees, seeking tactical advantage. As a result of defendants’ deadly gun battle, Patrick Daly was shot in the chest and killed almost instantly.
 

 At trial, all three defendants sought to exonerate themselves by arguing self-defense — each claiming that their opponent shot first and they were justified in firing back. Under New York law, however, a person who reasonably believes that another is about to use deadly physical force is not free to reciprocate with "deadly physical force if he knows that he can with complete safety as to himself and others avoid the necessity of so doing by retreating” (Penal Law § 35.15 [2] [a];
 
 People v Goetz,
 
 68 NY2d 96, 106). Here, there was evidence that defendants did not avail themselves of opportunities for safe retreat, choosing instead to use deadly force against each other. As such, there was adequate support for each jury’s rejection of defendants’ justification defense.
 

 The evidence adduced at trial was also sufficient for the jury to determine that all three defendants acted with the mental culpability required for depraved indifference murder, and that they intentionally aided and encouraged each other to create the lethal crossfire that caused the death of Patrick Daly.
 

 To the extent defendants’ remaining arguments are preserved, we conclude that they are without merit.
 

 Accordingly, in each case the order of the Appellate Division should be affirmed.
 

 Judges Titone, Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 In each case: Order affirmed.
 

 *
 

 The charge of second degree murder under a transferred intent theory, pursuant to Penal Law § 125.25 (1), was dismissed by the trial court.