# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Aaron Scott Young Jr., Petitioner.

Appellate Case No. 2018-001861

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Beaufort County
Thomas W. Cooper Jr., Circuit Court Judge

---

Opinion No. 27942
Heard November 20, 2019 – Filed February 5, 2020

---

## AFFIRMED

---

F. Elliotte Quinn IV, of The Steinberg Law Firm, LLP, of
Summerville, and Jennifer K. Dunlap, of Parker Poe
Adams & Bernstein, LLP, of Charleston, for Petitioner.

Attorney General Alan Wilson, Deputy Attorney General
Donald J. Zelenka, and Senior Assistant Deputy Attorney
General Melody J. Brown, all of Columbia; and Solicitor
Isaac McDuffie Stone III, of Bluffton, for Respondent.

---

**ACTING CHIEF JUSTICE KITTREDGE:** In the course of a gun battle
between mutual combatants, a bullet fired at Petitioner Aaron Young Jr. (Young

Jr.) missed its intended mark and killed an unintended victim; all involved in the gun battle, including Young Jr., were charged with murder. The heart of this case deals with the reach of the doctrines of mutual combat and transferred intent.

Young Jr. and his father Aaron Young Sr. (Young Sr.) willingly engaged a rival, Tyrone Robinson, in a cat-and-mouse gun battle in a residential neighborhood. The gun battle came to a tragic conclusion when Robinson shot and killed an unintended victim, an eight-year-old child who was playing in the area. The State charged all three combatants with the murder of the victim. Robinson's murder charge stemmed from a straightforward application of the doctrine of transferred intent. The Youngs' murder charges stemmed from an application of the doctrine of mutual combat,[1] under which each combatant is criminally responsible for a death caused by any of the other combatants, regardless of whether he fought with or against the killer-combatant.

Today, we hold mutual combat can properly serve as the basis for a murder charge for the death of a non-combatant under the "hand of one is the hand of all" theory of accomplice liability. When two or more individuals engage in combat via a reckless shootout, they collectively trigger an escalating chain reaction that creates a high risk to any human life falling within the field of fire. In that type of gunfight, *all* individuals are willing to use lethal force and display a depraved indifference to human life. More importantly, an innocent bystander would not be shot but for the willingness of all combatants to turn an otherwise peaceful environment, often a residential or commercial setting, into a battlefield. In a real sense, each combatant aids and encourages all of the other combatants—whether friend or foe—to create the lethal crossfire. We therefore find the law sanctions holding Young Jr. responsible for the actions of Robinson in causing the victim's death. Both men were equally culpable. As a result, we affirm Young Jr.'s murder conviction and sentence.[2]

---

[1] To be clear, the Youngs were charged with murder, not mutual combat. Of course, mutual combat is not a stand-alone crime in South Carolina. Rather, it is a theory of criminal liability that underlies a recognized crime such as murder or manslaughter. As we will explain later, the mutual combat doctrine is most commonly used to negate self-defense, but may also be used as a basis to sustain a murder or manslaughter conviction.

[2] Young Jr. also appeals his conviction for the attempted murder of Robinson. At one point in the combat, Young Jr. had his gun pointed at Robinson. When Young Jr. pulled the trigger, the gun jammed and did not fire. This action resulted in a

**I.**

Prior to the date of the gun battle, Robinson and Young Jr. had a history of violent confrontations with one another. On the day in question, Robinson drove to the Youngs' house and began arguing with Young Jr. outside, eventually pulling out a .38 caliber revolver and moving toward Young Jr. Young Sr. was present and attempted to take Robinson's gun away. While the two struggled for possession of the weapon, the revolver discharged. Young Sr. backed away, but Robinson fired once or twice more at the ground by Young Sr.'s feet. Robinson then returned to his vehicle and sped away.

This confrontation began a series of armed exchanges between the Youngs and Robinson across multiple residential neighborhoods over the next hour, wherein one side would catch up with the other, shoot, and flee. During the penultimate exchange, the Youngs were unable to locate Robinson but saw his unoccupied vehicle, so Young Jr. "swiss cheese[d] that car"—shooting at it over twenty times—despite the fact that he (Young Jr.) had just seen a group of children playing on a trampoline a short distance away. As the Youngs fled again, Robinson emerged from hiding and shot at their car three times, missing the Youngs, but tragically hitting the victim, who had been playing on the trampoline. Following their arrests, all three men were charged with the victim's murder.

Prior to the start of trial, Young Jr. moved to dismiss the murder indictment, arguing the charge was based on the theory of mutual combat, which was not a stand-alone theory of criminal responsibility in South Carolina, but instead a limitation on self-defense.[3] The State acknowledged that, prior to charging Young Jr., the doctrine of mutual combat had not been used to impose liability for the death of a non-combatant. *See, e.g.*, *State v. Brown*, 108 S.C. 490, 499, 95 S.E. 61, 63 (1918) ("[E]very one [sic] is presumed to know the consequences of his act, and if one voluntarily enters a mutual combat where deadly weapons are used, knowing that they are being used, and *death results to one of the participating parties*, every

---

charge of attempted murder. We affirm the conviction for attempted murder pursuant to Rule 220(b), SCACR, as any argument that Young Jr. did not attempt to kill Robinson is manifestly without merit.

[3] *See, e.g.*, *Jackson v. State*, 355 S.C. 568, 571, 586 S.E.2d 562, 563 (2003) ("Mutual combat bars a claim of self-defense because it negates the element of 'not being at fault.'" (citing *State v. Graham*, 260 S.C. 449, 450, 196 S.E.2d 495, 495–96 (1973))).

one [sic] engaged in such combat is equally guilty, regardless of whether he used a deadly weapon or not. And regardless of whether he was on one side or the other makes no difference, and where all are participating in the mutual combat, all are equally responsible for the natural consequences." (emphasis added)). The State argued it was a reasonable extension of the mutual combat doctrine to impose liability on all combatants for the death of an innocent bystander as well. Importantly, Young Jr. conceded the theory of mutual combat *would* apply to hold Young Jr. responsible for murder if, for example, Robinson had shot and killed Young Sr. instead of the victim because Young Sr. was a co-combatant. However, because the victim was not a combatant, Young Jr. argued he could not be found criminally responsible for the victim's murder.

The trial court denied Young Jr.'s motion to dismiss the indictment, noting that in mutual combat situations all participating parties were responsible for their fellow combatants' actions resulting in injuries to other participants in the combat. Although the experienced trial judge recognized the facts of this case represented an extension of the existing case law, he found Young Jr. could be held liable for the murder of the victim based on the theories of mutual combat and transferred intent, agreeing with the State's argument that

> it would be very difficult to understand how if multiple people are shooting at each other and someone in the group is killed and everyone's responsible how they would also not be responsible if an innocent third party was shot.

Comparing this mutual combat scenario with the "hand of one is the hand of all" doctrine, the trial judge concluded, "[I]t is not the identity of the victim that controls, it is the intent, the state of mind which led to the mutual combat in the first place and the consequences that followed from that."

Ultimately, the jury convicted Young Jr. of murder, and the trial court sentenced him to thirty years' imprisonment. Young Jr. appealed, and the court of appeals affirmed. *State v. Young*, 424 S.C. 424, 818 S.E.2d 486 (Ct. App. 2018). We granted Young Jr.'s petition for a writ of certiorari to review the decision of the court of appeals.

## II.

Young Jr. argues mutual combat cannot be used as the grounds on which to base criminal responsibility for murder, but instead may only be used as a limitation on self-defense. We disagree.

## A.

"The doctrine of mutual combat has existed in South Carolina since at least 1843, but has fallen out of common use in recent years." *State v. Taylor*, 356 S.C. 227, 231, 589 S.E.2d 1, 3 (2003). To constitute mutual combat, there must be a mutual intent and willingness to fight, "manifested by the acts and conduct of the parties and the circumstances attending and leading up to the combat." *Graham*, 260 S.C. at 450, 196 S.E.2d at 495; *see also Taylor*, 356 S.C. at 235, 589 S.E.2d at 5 ("The mutual combat doctrine is triggered when both parties contribute to the resulting fight."); *Brown*, 108 S.C. at 499, 95 S.E. at 63 ("[T]o constitute mutual combat, it is not necessary that there should be a positive agreement between the participating parties to enter the combat; it is sufficient if they [willfully] enter into the conflict, upon the impulse of the moment."). The State is required to prove the rival combatants were armed for the mutual combat with deadly weapons and each combatant knew the others were armed. *Taylor*, 356 S.C. at 233–34, 589 S.E.2d at 4–5. Mutual combat may be the basis of either a murder or manslaughter conviction depending on the combatant's state of mind at the time of the killing, i.e., whether the combatant acted with malice aforethought. *Id.* at 232, 589 S.E.2d at 3–4 (quoting *State v. Andrews*, 73 S.C. 257, 260, 53 S.E. 423, 424 (1906)).

The majority of jurisdictions impose criminal responsibility on all combatants for the consequences of mutual combat. In line with the majority approach, South Carolina law has long recognized that criminal liability may be imposed on all combatants for the death of one of the participating parties because all are presumed to know and intend the consequences that naturally flow from their unlawful acts. *Brown*, 108 S.C. at 499–500, 95 S.E. at 63. In South Carolina and many other jurisdictions, the criminal liability stemming from mutual combat does not depend on which side(s) the combatant or the deceased fought. *Id.* Thus, for example, a combatant may properly be found guilty of murder for the death of a friendly co-combatant at the hands of a rival combatant. *See id.* In the eyes of the law, it does not matter that the combatant did not intend any harm to the friendly co-combatant. *People v. Sanchez*, 29 P.3d 209, 223 (Cal. 2001) (Kennard, J., concurring); *see also Brown*, 108 S.C. at 491–500, 95 S.E. at 61–63 (upholding the manslaughter convictions of three non-striking employees/combatants who participated in a fight between strikers and non-strikers that resulted in the death of a striker at the (accidental) hands of a fellow striker). Rather, the death of the friendly co-combatant was a harm that both in kind and degree was within the foreseeable risks the participants expected and intended to result from the mutual combat. *See Sanchez*, 29 P.3d at 223 (Kennard, J., concurring); *Roy v. United States*, 871 A.2d 498, 507–09 & n.10 (D.C. 2005) (collecting cases);

*Commonwealth v. Santiago*, 681 N.E.2d 1205, 1215 (Mass. 1997) (noting death is "a natural result of a shootout").

However, the existence of mutual combat is not wholly dispositive of criminal liability. A combatant may withdraw from mutual combat if he "endeavors in good faith to decline further conflict, and, either by word or act, makes that fact known to his adversary." *Graham*, 260 S.C. at 451, 196 S.E.2d at 496 (citation omitted). Should a combatant satisfy the requirements to withdraw from mutual combat, he may no longer be held liable for the actions of his former co-combatants. *Cf. id.* (explaining that although a mutual combatant ordinarily may not validly claim self-defense, if he withdraws from the mutual combat, his right to self-defense is restored); *State v. Hendrix*, 270 S.C. 653, 659 n.3, 244 S.E.2d 503, 506 n.3 (citing 40 C.J.S. *Homicide* §§ 121, 133 (1944)) (explaining that withdrawing from the conflict restores a defendant's right to self-defense).

**B.**

No appellate court in South Carolina, however, has addressed the import of the mutual combat doctrine on the death of an innocent bystander. Jurisdictions that have considered a factual scenario analogous to the present case are nearly unanimous in finding mutual combat may serve as the basis for criminal liability for all combatants charged with murder or manslaughter, regardless of who fired the fatal shot. A number of jurisdictions reached this result under an aiding and abetting theory similar to South Carolina's "hand of one is the hand of all" doctrine. *See, e.g.*, *State v. Spates*, 779 N.W.2d 770, 777–79 (Iowa 2010) (collecting cases and adopting this approach).

For example, in *Alston v. State*, the Court of Appeals of Maryland affirmed a second-degree murder conviction of a participant in a gun battle, despite proof that the innocent bystander was shot and killed by a member of the rival group. 662 A.2d 247, 247–48 (Md. 1995), *aff'g* 643 A.2d 468 (Md. Ct. Spec. App. 1994). In rejecting the defendant's argument that he did not aid and abet his rival in killing the bystander, the court explained the "argument rests heavily on [the defendant] disassociating himself from the [rival group's actions] and from the particular shot that killed [the bystander]. *The relevant frame of reference, however, is [the defendant's] participation in the gun battle*." *Id.* at 252 (emphasis added). The court found significant the fact that both groups "were armed and prepared to do battle whenever and wherever their forces encountered one another" and "opened fire, returned fire, and continued to fire in mindless disregard of the lives of the people on the street and in the surrounding houses." *Id.* Likewise, the court determined the firefight demonstrated each participant was willing to use lethal

force and exhibited the malice necessary to support a second-degree murder conviction. *Id.* The court concluded that "all of the participants, driven by an unwritten code of macho honor, tacitly agreed that there would be mutual combat. . . . *Though the groups were adversaries at one level of analysis, at the level of analysis relevant to depraved[-]heart murder, each group aided, abetted, and encouraged the other to engage in urban warfare.*" *Id.* at 254 (emphasis added).

Similarly, in *People v. Russell*, the Court of Appeals of New York upheld a defendant's second-degree murder conviction even though the State was unable to establish which of the three combatants fired the shot that fatally wounded an innocent bystander. 693 N.E.2d 193, 194 (N.Y. 1998). The court explained the State "was not required to prove which defendant fired the fatal shot when the evidence was sufficient to establish that each defendant acted with the mental culpability required for the commission of depraved[-]indifference murder, and *each defendant 'intentionally aided' the defendant who fired the fatal shot.*" *Id.* at 195 (emphasis added). The court rejected the co-combatants' arguments that, as adversaries in a gun battle, they did not "share[] the 'community of purpose' necessary for accomplice liability," explaining that each of their respective actions made the gun battle possible, as there would not have been a firefight at all had they not been shooting at one another. *Id.* at 195–96 (discussing *People v. Abbott*, 445 N.Y.S.2d 344, 347 (App. Div. 1981),[4] and citing, *inter alia*, *People v. Fabian*, 586 N.Y.S.2d 468, 471 (Sup. Ct. 1992) ("Although [the] defendants were trying to injure, if not kill each other, at the very same time they acted in concert to create an explosive condition which resulted inevitably in [the victims' death and injuries].")). The court therefore held the evidence was sufficient for the jury to find all three co-combatants acted with the mental culpability required for depraved-indifference murder, and the three men "*intentionally aided and encouraged each other to create the lethal crossfire that caused the death of [the victim].*" *Id.* at 196 (emphasis added).

---

[4] In *Abbott*, the court held a defendant/drag racer equally complicit in the death of a bystander killed by the defendant's rival racer because the defendant's "conduct made the race possible." 445 N.Y.S.2d at 347. In particular, the court found that the defendant "accepted [his rival racer's] challenge and shared in the venture. Without [the defendant's] aid[, the rival racer] could not have engaged in the high-speed race which culminated in the tragedy. The accident was 'the culmination of a continuum of events' in which both [racers] participated." *Id.* (citation omitted).

We find the aiding and abetting approach outlined in *Alston* and *Russell* dovetails with our "hand of one is the hand of all" doctrine. *See, e.g.*, *State v. Harry*, 420 S.C. 290, 299, 803 S.E.2d 272, 276–77 (2017) (explaining that under the "hand of one is the hand of all" doctrine, one who joins with another to accomplish an illegal purpose—whether by *encouraging or aiding and abetting*—is guilty as a principal). We agree with those jurisdictions that have concluded co-combatants who aid and incite one another to engage in the fight that leads to the death or injury of an innocent bystander are equally criminally liable.[5] As a result, we extend our mutual combat jurisprudence to permit finding all mutual combatants criminally liable in situations where an innocent bystander is killed by one of the combatants.[6] *Cf. Roy*, 871 A.2d at 507 ("We think it important to note that while proximate causation as a theory of second-degree murder liability has been recognized in our case law for some time, the factual scenario of a 'gun battle' on city streets, as in this case, is relatively new. While urban gun battles years ago involved revolvers or clipped pistols of limited fire power, they have now escalated

---

[5] *See, e.g.*, *Reyes v. State*, 783 So.2d 1129, 1132–33 (Fla. Dist. Ct. App. 2001); *March v. State*, 458 So.2d 308, 309 (Fla. Dist. Ct. App. 1984) (per curiam); *Spates*, 779 N.W.2d at 779–80 (discussing with approval *State v. Brown*, 589 N.W.2d 69, 74–75 (Iowa Ct. App. 1998), *overruled on other grounds by State v. Reeves*, 636 N.W.2d 22 (Iowa 2001)); *State v. Garza*, 916 P.2d 9, 15 (Kan. 1996); *Alston*, 662 A.2d at 252–54; *Santiago*, 681 N.E.2d at 1215; *Russell*, 693 N.E.2d at 195–96.

[6] Other jurisdictions have reached a similar result by finding the mutual combat was the proximate cause of the innocent bystander's death, rather than by applying an aiding and abetting theory. *See Spates*, 779 N.W.2d at 777 (collecting cases). In doing so, the courts held the defendant criminally responsible as a principal on the basis of his own conduct. *See, e.g.*, *Sanchez*, 29 P.3d at 217–20 (collecting cases); *id.* at 223 (Kennard, J., concurring); *Roy*, 871 A.2d at 507–08 & n.10 (collecting cases); *Brown*, 589 N.W.2d at 74–75; *Phillips v. Commonwealth*, 17 S.W.3d 870, 875 (Ky. 2000); *cf. Commonwealth v. Gaynor*, 648 A.2d 295, 297, 299 (Pa. 1994) (reaching the same result under a state statute dealing with mutual combat and transferred intent). We view the proximate cause theory of liability and the "hand of one is the hand of all" theory of liability as overlapping theories, tightly intertwined with one another. *See, e.g.*, *Santiago*, 681 N.E.2d at 1215 (noting that a defendant may be the proximate cause of a bystander's death because death is the natural result of a shootout, and because "the shootout could not occur without participation from both sides"); *People v. Daniels*, 431 N.W.2d 846, 851 (Mich. Ct. App. 1988).

to the use of automatic and semiautomatic weapons. The results are pocket wars with no rules of engagement resulting in a highly increased risk to noncombatants. It is this increased risk to innocent bystanders which justifies the application of proximate cause liability to those participants who willfully choose to engage in these battles.").

## C.

As applied here, the Youngs and Robinson were clearly engaged in mutual combat.[7] In a real sense, although they were adversaries, the Youngs and Robinson jointly incited one another to continue the cat-and-mouse gun battle that resulted in the victim's death. While Robinson may have been the man who pulled the trigger and formally killed the victim, he would not have fired that shot had it not been for the "aid" and "encouragement" of the Youngs. To myopically narrow the focus only to Robinson's actions misses the point.

We therefore find the deadly homicidal force here was not the single bullet that struck and killed the victim, but rather a collective fusillade that spanned several neighborhoods over the course of one hour. *See Alston*, 643 A.2d at 469; *see also Roy*, 871 A.2d at 507 n.10 ("[C]ourts have determined that the combined hail of bullets that result from such a battle are jointly responsible for the fatal injury, such that a determination of which defendant's bullet 'actually' caused the death is unnecessary."). The Youngs and Robinson voluntarily and jointly created a battlefield that encompassed any number of innocent and unwilling bystanders— including young children like the victim. *See Russell*, 693 N.E.2d at 195. Given the Youngs and Robinson's collective actions in carrying out the gun battle, it is reasonable for the law of mutual combat to serve as the foundation of a murder charge—to hold each one responsible for both his own actions and the actions of the others. *Id.* Because we find the deadly force used in this case was the result of collective action, we hold the responsibility for the victim's death was collective as well. Accordingly, we hold Young Jr. was properly charged with the victim's murder under the theory of mutual combat.

---

[7] Young Jr. moved for a directed verdict on the murder charge by claiming there was no evidence he and Robinson were engaged in mutual combat. The trial court denied the motion for a directed verdict, finding the evidence showed the shootout was the culmination of a running argument between the Youngs and Robinson. We agree. Any argument that there was no evidence of mutual combat is manifestly specious, as the evidence of mutual combat was overwhelming.

## III.

Today, we extend our jurisprudence and hold that each participant who willingly engages in mutual combat may be held accountable for the death or injury of an innocent bystander resulting from that confrontation. As each combatant aids and encourages the others to fire and continue firing the hail of bullets that results in a victim's death or injury, each may be found guilty under the "hand of one is the hand of all" theory of accomplice liability. Accordingly, we affirm the court of appeals' decision upholding Young Jr.'s convictions and sentences.[8]

---

[8] As a final matter, at trial, Young Jr. asked the trial court to instruct the jury on the end of mutual combat, claiming that by fleeing after "swiss cheesing" Robinson's car, he had ended the fight. The trial court refused to give such an instruction, stating that the Youngs' flight at that point was more akin to a temporary retreat than an unequivocal cessation of the gun battle, which the law requires. Pointing to the fact that the fight spanned several neighborhoods, the trial court found it "unlikely that the shooting of the car and then leaving is a signal that [the Youngs] have chosen at that point in time to fold their tents and move away and that the battle is over and truce has been declared." *See Graham*, 260 S.C. at 451, 196 S.E.2d at 496 (explaining that in order to withdraw from mutual combat, the defendant must—before the homicide is committed—"withdraw[] and endeavor[] in good faith to decline further conflict, and, either by word or act, *make[] that fact known to his adversary*" (emphasis added) (citation omitted)). In support of the trial court's observation, we note that Young Jr. admitted to police that after Robinson fired the shots at the Youngs' fleeing truck following the "swiss-cheesing" of Robinson's car, he yelled at his father to turn the truck around and return to the gun battle. There is no indication that the Youngs' retreat after "swiss-cheesing" Robinson's car was any different than any of their previous—and, more importantly, *temporary*—retreats. Significantly, Young Jr. made no attempt to communicate to Robinson that *this* retreat was a complete withdrawal from the ongoing gun battle.

We nevertheless need not reach the challenge of Young Jr. that the trial court's failure to instruct the jury on the end of mutual combat was reversible error. This is because of Young Jr.'s concession at trial that he would have been guilty of murder via the mutual combat doctrine had Robinson shot and killed Young Sr. instead of the victim. In so conceding, Young Jr. tacitly admitted the mutual combat was ongoing at the time of the victim's death. That concession removed any basis on which to instruct the jury on the end of mutual combat.

**AFFIRMED.**


**JAMES, FEW, JJ., and Acting Justice Aphrodite K. Konduros, concur. HEARN, J., dissenting in a separate opinion.**

**JUSTICE HEARN:** I respectfully dissent. While I agree with the majority to affirm the conviction for attempted murder, I disagree with extending the doctrine of mutual combat to hold Aaron Young Jr. responsible for the murder of the bystander victim. Specifically, I find the lapse of time between when the gun shots were fired at Robinson's car and when the fatal shots occurred prevents the extension of the mutual combat doctrine under our "hand of one is the hand of all" theory. Moreover, even if the doctrine applied here, the trial court erred in failing to charge the jury on the end of mutual combat.

In extending the doctrine of mutual combat, the majority relies on several cases from other jurisdictions, all of which are factually and materially distinct from this case. Every case cited by the majority involves individuals or groups on opposite sides who engaged in a gun battle where both sides *contemporaneously* opened fire on one another. There, the gunfire was characterized as the "combined hail of bullets," "shower of bullets," "lethal crossfire," and "gang-style gun play" in which both parties participated and induced the other to engage in a battle that proximately caused the death of an innocent bystander. Here, the majority portrays the events of this case as a continuous, ongoing gun battle in which the parties' collective action resulted in a bystander's death. However, unlike the cases on which the majority relies, there is no evidence to support that a simultaneous exchange of bullets occurred and caused the victim's death. Rather, a considerable amount of time passed between Young Jr.'s attack on Robinson's empty car and Robinson's retaliatory shooting which killed the victim. Indeed, a neighbor testified at trial that approximately ten minutes elapsed between these two events. Even the trial court's reasoning for charging mutual combat contemplated only the scenario where "multiple people are shooting at each other." Moreover, at oral argument, counsel for both parties acknowledged that a concrete lapse of time in which the "warfare" had subsided would prevent the State from charging a defendant with murder under a mutual combat theory. While it may be sound public policy to extend the doctrine under circumstances analogous to those in the cases cited, and I would be inclined to do so in the proper case, I disagree with the application of the doctrine under the facts presented here.

Even if the mutual combat charge was appropriate, the trial court erred in failing to instruct the jury on the end of mutual combat. The majority declines to reach this issue because it believes Young Jr. conceded at trial that he would have been guilty of murder through mutual combat if Robinson had shot and killed Young Sr. instead of the victim. However, in my view, this interpretation misstates the record. To gain a better understanding of the mutual combat doctrine and its application in the bystander context, the trial judge posed a hypothetical to Young

Jr., stating "if the Youngs and Mr. Robinson are out there shooting at each other, that if either one of them got shot and killed, that everybody would be guilty under mutual combat." Young Jr. agreed, stating "there's no question but the fact that if Aaron Sr. had gotten shot, then everybody would be responsible, but that's not what happened." I understand his response to the judge's hypothetical to be in the context expressed in *State v. Brown*, providing for criminal liability through mutual combat when another combatant is killed, and in the cases cited by the majority, where both parties are shooting at each other simultaneously and a bystander is killed. I do not believe there was any concession under these facts, where the Youngs clearly were not engaged in a shootout with Robinson at the time he fired the fatal shots.

In addition to relying on defense counsel's ostensible concession, the majority seems to imply that the charge was wholly unnecessary as a matter of law because there was no indication of withdrawal. As the majority notes, the trial court believed the facts evidenced a "temporary retreat" rather than a withdrawal ending the combat. While this may have been the case, and the jury could have agreed, the fact remains that if there was any evidence to support withdrawal, the trial judge should have given the charge. *State v. Smith*, 391 S.C. 408, 412, 706 S.E.2d 12, 14 (2011) ("If there is any evidence to warrant a jury instruction, a trial court must, upon request, give the instruction."); *State v. Shuler*, 344 S.C. 604, 632, 545 S.E.2d 805, 819 (2001) ("If there is any evidence to support a charge, the trial judge should grant the request."); *State v. Burriss*, 334 S.C. 256, 262, 513 S.E.2d 104, 108 (1999) ("It is well-settled the law to be charged is determined from the evidence presented at trial, and if any evidence exists to support a charge, it should be given. The trial court commits reversible error if it fails to give a requested charge on an issue raised by the evidence."). At a minimum, the Youngs' conduct of driving away constituted some evidence of their withdrawal such that a charge on this issue was warranted. Therefore, I would affirm the conviction for attempted murder and reverse on the murder conviction and jury charge issues.